UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PORTER SMITH,

       Plaintiff,

v.                                                          Civil Case No. 20-10421
                                                            Honorable Linda V. Parker

MICHIGAN DEPARTMENT OF
CORRECTIONS and STATE OF
MICHIGAN,

       Defendants.
_____/

## OPINION AND ORDER

Plaintiff, a former Michigan Department of Corrections ("MDOC") officer, brought this action against MDOC and the State of Michigan, alleging that Defendants failed to accommodate his hip injury and retaliated against him in violation of the Rehabilitation Act. As a result of this Court's ruling (ECF No. 35) on Defendants' previous summary judgment motion (ECF No. 26), the only claim remaining for trial is Plaintiff's retaliation claim. The matter is presently before the Court on Defendants' second summary judgment motion addressing several issues with respect to Plaintiff's claimed damages.[1] (ECF No. 51.) The motion is

---

[1] The Court granted Defendants permission to file this second summary judgment motion. (ECF No. 49.)

fully briefed (ECF Nos. 52, 54) and is appropriate for determination without a

hearing, *See* E.D. Mich. L.R. 7.1(f)(2).

## Factual and Procedural Background

The Court assumes the reader's familiarity with the more detailed factual

background set forth in its earlier summary judgment decision. (ECF No. 35.)

More briefly, Plaintiff worked as a corrections officer at MDOC's Macomb

Correctional Facility ("MCF"). After suffering a hip injury on July 1, 2017,

Plaintiff began a prolonged period of leave from work. He returned to work in

early December, with accommodated restrictions in a transitional employment

("TE") position.

On or about June 13, 2018, Plaintiff was informed that his TE assignment

would expire on July 13. Plaintiff argued that he was being treated differently than

other injured corrections officers who were provided accommodations for longer

periods of time, and that there were multiple vacancies within MCF he could fill.

Plaintiff's accommodations request was denied on August 1. On the same date, he

received a form indicating that if he could not return to normal work by August 10,

his choices were to retire, resign, be placed on a medical layoff, or take a waived

rights leave of absence. Plaintiff disputed the denial decision but eventually

selected waived rights leave on August 9.

In the interim, on June 9, a registered nurse lodged a sexual harassment complaint against Plaintiff, claiming that Plaintiff made inappropriate comments to her in late May.  On June 28, Plaintiff received a formal notice that MDOC was investigating the allegations.  As part of its investigation, an MCF inspector, Kristopher Steece, searched Plaintiff's work email for evidence that might confirm the allegations.  Steece found no such evidence but did find emails from Plaintiff to non-MDOC staff of a personal nature.  Steece stated that having these emails "wasn't a problem" but he referred his discovery to MCF's warden as a possible violation of MDOC's computer-use rules.

On August 28, even though Plaintiff was now on leave and no longer working at MCF, the warden determined that a separate investigation into Plaintiff's computer use was warranted.  As part of the investigation, Plaintiff's emails from May 1 to August 1 were requested; however, by then, Plaintiff's email account had been deleted and any messages were no longer accessible.

On September 26, the sexual harassment investigation was closed due to insufficient supporting evidence.  The email investigation, however, remained open and, on October 6, a questionnaire was mailed to Plaintiff concerning his email use.  Plaintiff did not receive the questionnaire until October 10, the day after his response was due according to the mailing.  Plaintiff nevertheless mailed

3

the questionnaire back, although the investigator handling the matter claims it was never received.

Ultimately the inspector found insufficient evidence that Plaintiff used his computer improperly. However, Plaintiff was found guilty of violating the "Reporting Requirements" work rule based on his failure to respond to the questionnaire. Because Plaintiff was no longer working, he was neither informed of the inspector's finding nor provided an opportunity to deny the violation.

By August 2019, Plaintiff was ready to return to work and he requested reinstatement as a corrections officer on August 22. MDOC denied his request a month later on September 19, citing Plaintiff's pending discipline for violating the Reporting Requirements work rule.

Plaintiff filed the pending lawsuit on February 19, 2020. With respect to his remaining retaliation claim, Plaintiff claims "injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of employee benefits, loss of promotional opportunities, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life." (ECF No. 1 at Pg ID 12, ¶ 67.) He further alleges that "Defendants are liable to Plaintiff for all damages allowed under federal law." (*Id*. ¶ 68.) In response to Defendants' Interrogatories, Plaintiff provided a chart of his damages which included: (a) lost wages; (b) a lost $10,000

4

deposit on the construction of a new home; (c) $8,000 in taxes due to a withdraw from his 401k; (d) unpaid bills from Citi Bank ($6,000), Chase ($11,00), and Greensky ($11,000); (e) amount due on mortgage; (f) "unenroll[ing] daughter from private education cost $1,000/monthly"; (g) meeting a bankruptcy attorney about filing for bankruptcy; (h) "major hit" to his 401k due to a lack of contributions; (i) loss of pension; (j) lost time with State of Michigan; and (k) moving in with his mother-in-law due to a loss of income.  (ECF No. 55 at Pg ID 1509-10.)  Plaintiff also referred to emotional distress damages.  (*Id*. at Pg ID 1510.)

On July 21, 2022, Defendants sent Plaintiff, through Plaintiff's counsel, an "Unconditional Offer of Reemployment."  (ECF No. 51-2.)  The offer is for "Corrections Officer-E" at "a higher rate of pay (due to civil service increases) and the same or similar working hours, benefits, insurance, and so on" that Plaintiff previously had with MDOC.  (*Id*.)  Plaintiff was offered an assignment "at the correctional facility of his choice."  (*Id.* (emphasis removed).)  According to Defendants, the offer was rejected.  (ECF No. 51 at Pg ID 1108.)

In response to a motion in limine filed by Defendants (ECF No. 40), Plaintiff conceded that emotional distress and punitive damages are not recoverable under the Rehabilitation Act (ECF No. 46 at Pg ID 1035).  Defendants then filed their pending second summary judgment motion attempting to limit Plaintiff's damages further.

## Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one that 'might affect the outcome of the suit under the governing law.' And a genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the [nonmoving] party.'" *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849 (6th Cir. 2020) (first quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); then quoting *Jackson v. VHS Detroit Receiving Hosp., Inc*., 814 F.3d 769, 775 (6th Cir. 2016)).

The moving party bears the burden of demonstrating an absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## Applicable Law and Analysis

<u>Damages Recoverable Under the Rehabilitation Act – Generally</u>

The Supreme Court has directed that in a private Spending Clause action, such as an action under the Rehabilitation Act, "a particular remedy is available . . . only if the funding recipient is on notice that, by accepting the federal funding, it exposes itself to liability of that nature." *Cummings v. Premier Rehab Keller, PLLC*, -- U.S. --, 142 S. Ct. 1562, 1570 (2022) (citing *Barnes v. Gorman*, 536 U.S. 181, 187 (2002)). "[A] federal funding recipient may be considered on notice that it is subject . . . to those remedies traditionally available in suits for breach of contract." *Id*. at 1571 (quotation marks and citation omitted).

The Rehabilitation Act, like Title II of the Americans with Disabilities Act, borrows its remedial scheme from Title VI of the 1964 Civil Rights Act. *Jones v. City of Detroit*, 20 F.4th 1117, 1119 (6th Cir. 2021) (citing 29 U.S.C. § 794a(a); 42 U.S.C. § 12133). This means "[t]he remedies available for violations of Title II of the ADA and § 505 of the Rehabilitation Act are 'coextensive' with those for Title VI[.]" *Id*. (quoting *Barnes*, 536 U.S. at 185). Compensatory damages are among the damages available under these statutes. *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 239-40 (6th Cir. 2019) (citing *Barnes*, 536 U.S. at 187); *Johnson v. City of Saline*, 151 F.3d 564, 573 (6th Cir. 1998) (holding that compensatory damages are available under the ADA). Back pay, reinstatement,

7

and other equitable relief may be awarded, as well.  *See* 42 U.S.C. § 2000e-5(g)(1).

Front pay is an appropriate remedy in lieu of reinstatement where "exceptional

circumstances make the chances for a satisfactory employment relationship

unlikely."  *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1233 (6th

Cir. 1996) (citing *Shore v. Fed. Exp. Corp.*, 777 F.2d 1155, 1159 (6th Cir. 1985)).

A fundamental principle of contract law is that "[d]amages are not

recoverable for loss that the party in breach did not have reason to foresee as a

probable result of the breach when the contract was made."  Restatement (Second)

of Contracts § 351 (1981); *Hadley v. Baxendale*, 156 Eng. Rep. 145 (1854).  To be

eligible for compensatory damages, the plaintiff also must show that the

defendant's unlawful actions caused the claimed injury.  *Turic v. Holland Hosp.,*

*Inc.*, 85 F.3d 1211, 1215 (6th Cir. 1996) (citing *Carey v. Piphus*, 435 U.S. 247,

263-64 (1978)).

The plaintiff has a duty to take reasonable steps to mitigate his or her

damages.  *Suggs*, 72 F.3d at 1233 (citing *Ford v. Nicks*, 866 F.2d 865 (6th Cir.

1989)).

## Lost Wages

Defendants first argue that, to the extent Plaintiff prevails on his retaliation

claim, his lost wages are limited to the dates between September 19, 2019—the

day MDOC declined to rehire him—to July 21, 2022—the day he was provided

8

with the unconditional offer of reinstatement.  Defendants point to Plaintiff's deposition testimony, where he indicated that he wanted to go back to work for the State of Michigan, such as MDOC.  By rejecting the unconditional offer of reinstatement, Defendants argue that Plaintiff failed to mitigate his damages.

The Sixth Circuit has indicated that "[r]einstatement 'is the presumptively favored equitable remedy' when an employee is improperly discharged[.]" *McKelvey v. Sec. of U.S. Army*, 450 F. App'x 532, 537 (2011) (quoting *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 398 (6th Cir. 1993)).  "However, while reinstatement should be granted in the ordinary case, it is an equitable remedy which is not appropriate in every case, such as where the plaintiff has found other work, where reinstatement would require displacement of a non-culpable employee, or where hostility would result.  *Roush*, 10 F.3d at 398 (citing *Henry v. Lennox Indus.*, 768 F.2d 746, 752-53 (6th Cir. 1985)).

"While the determination of the precise amount of an award of front pay is a jury question, the initial determination of the propriety of an award of front pay is a matter for the court."  *Arban v. W. Pub. Corp.*, 345 F.3d 390, 406 (6th Cir. 2003) (internal quotation marks and citation omitted).  The determination of whether front pay is appropriate "must ordinarily precede its *submission of the case to the jury*."  *Roush*, 10 F.3d at 398-99 (emphasis added).  Several factors are relevant in deciding whether to award front pay, including "an employee's duty to mitigate,

9

the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, and the discount tables to determine the present value of future damages." *McKelvey*, 450 F. App'x at 537 (quoting *Roush*, 10 F.3d at 399) (brackets omitted).

In response to Defendants' motion, Plaintiff identifies cases brought by his counsel where reinstatement led to harassment and new lawsuits (ECF No. 52 at Pg ID 1150-51 (citations omitted)) and cites to other cases where evidence supported a finding that reinstatement was not appropriate due to the "discord and antagonism between the parties" (*Id.* at Pg ID 1153 (citing *Lewis v. Fed. Prison Indus., Inc.*, 953 F.2d 1277, 1279 (11th Cir. 1992); *Ortiz v. Bank of Am. Nat'l Trust & Savings Assoc.*, 852 F.2d 383, 837 (9th Cir. 1988)).  As Defendants point out in reply, however, this is not evidence that *this case* is the exceptional case where reinstatement is inappropriate.  In other words, Plaintiff offers no evidence of, for example, hostility that would result if he accepted Defendants' offer of reinstatement.

Plaintiff claims he will be able to present evidence at trial—his testimony and the testimony of his counselor—to support his rejection of the reinstatement offer.  Yet in response to a summary judgment motion, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (internal quotation marks and citation

omitted), and "support the assertion by . . . citing to particular parts of materials in the record . . .[,]" Fed. R. Civ. P. 56(c)(1).

Nevertheless, the basis on which the Court allowed Defendants to file a second summary judgment motion was Supreme Court precedent limiting damages in Rehabilitation Act actions to those remedies traditionally available in suits for breach of contract. Defendants do not now seek summary judgment with respect to Plaintiff's claim for lost wages on this basis. Therefore, the Court will reserve its determination on whether reinstatement is appropriate in this case and whether Plaintiff is otherwise entitled to front pay until trial. This determination will be made upon the evidence presented and before the case is submitted to the jury.

<u>Loss of Reputation and Esteem</u>

Defendants argue that loss of reputation and esteem are generally not recovered for breach of contract and thus are not available damages for a Rehabilitation Act violation post *Cummings*. Several district courts agree. *See, e.g., Party v. Ariz. Bd. of Regents*, No. CV-18-01623, 2022 WL 17459745, at *4 (D. Ariz. Dec. 6, 2022) (collecting cases). Plaintiff does not argue otherwise in response to Defendants' motion. Nor in Plaintiff's response brief does he list these damages as among those he is seeking in this action, despite the Court's instruction "to be specific about the damages he intends to request from the jury." (ECF No. 49 at Pg ID 1089, n. 2.)

11

The Court is therefore granting summary judgment to Defendants with respect to any claim for damages based on lost reputation and esteem.

<u>Loss of Career Opportunities and Earning Capacity</u>

Although acknowledging that damages for lost earning capacity can be awarded as consequential damages in a Rehabilitation Act action, Defendants argue that Plaintiff offers no evidence to show with specificity that Defendants' alleged retaliation adversely influenced or affected job opportunities. As Plaintiff does not identify loss of earning capacity in his response brief as a form of damages being sought, the Court finds it unnecessary to decide whether such damages are recoverable under the statute. Moreover, Plaintiff is precluded from seeking such damages because he fails to offer "sufficient evidence that [Defendants' retaliation] proximately caused the loss of identifiable professional opportunities." 24 Willison on Contracts § 66:4 (4th ed.) (quoting *Herrera v. Union 39 Sch. Dist.*, 917 A.2d 923, 933 (Vt. 2006)); *see also Rice v. Cmty. Health Ass'n*, 203 F.3d 283, 289 (4th Cir. 2000) (citing *Redgrave v. Boston Symphony Orchestra*, 855 F.2d 888, 894 (1st Cir. 1988)) (holding that loss of future professional opportunities damages are not available absent evidence of "identifiable professional opportunities" lost due to the defendant's conduct).

12

<u>Other Damages</u>

In his response brief, Plaintiff includes the chart of consequential damages he is seeking (*see* ECF No. 52 at Pg ID 1157-58), which he provided in answer to Defendants' interrogatories (ECF No. 55 at Pg ID 1509-1510).  Defendants reply that Plaintiff did not identify the majority of these damages as relief sought in his Complaint.  Defendants further argue that awarding Plaintiff lost income and the expenses left unpaid due to the loss of income would provide a double recovery. With respect to the lost deposit on new home construction and an IRS tax bill due to withdrawals from Plaintiff's 401k, Defendants assert that such damages were not foreseeable and, therefore, are not recoverable.

Defendants' first objection to these additional claimed damages is not well taken, as Plaintiff, in his Complaint, generally seeks as relief for his retaliation claim "all damages allowed under law[]" and "compensatory damages in whatever amount he is found to be entitled[.]"  (ECF No. 1 at Pg ID 12-13, ¶¶ 67, 68.) Moreover, Defendants had notice of these damages via Plaintiff's Answers to their Interrogatories.

Allowing a jury to award some of Plaintiff's claimed compensatory damages, however, would provide him with an improper double recovery.  *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (quoting *Gen. Tel. Co. of N.W. v. EEOC*, 446 U.S. 318, 333 (1977)) ("[I]t 'goes without saying that the

13

courts can and should preclude double recovery by an individual.'").  Courts have found that awarding damages for "lost income, via an award of back pay, and out-of-pocket expenses that would normally be paid from that income had the illegal conduct not occurred" creates a double recovery.  *Crump v. Tcoombs & Assoc.*, No. 2:13cv707, 2015 WL 12806526, at *1 (E.D. Va. Sept. 30, 2015) (collecting cases finding a double recovery where damages for lost income would duplicate damages for other expenses).  Such claimed expenses on Plaintiff's chart include the bills and tuition he has not been able to pay, his mortgage, and the contributions Plaintiff did not make to his 401k (as opposed to any his employer was obligated to make).[2]

As indicated, Plaintiff must demonstrate that the alleged retaliation caused his claimed damages and that such damages were a foreseeable consequence of such misconduct.  *See supra*.  Plaintiff claims damages for the amount he was taxed due to the withdrawal of $30,000 from his 401k.  A jury could find such an injury foreseeable if it was caused by the alleged misconduct.  *See Pappas v. Watson Wyatt & Co.*, No. 3:04CV304, 2007 WL 4178507, at *4 (D. Conn. Nov. 20, 2007) (concluding that damages reflecting the penalty paid by the plaintiff for

---

[2] It is unclear what damages Plaintiff incurred due to the withdrawal of his daughter from private education, meeting with a bankruptcy attorney about filing for bankruptcy, and having to move in with his mother-in-law, beyond perhaps emotional damages which are not recoverable under the Rehabilitation Act. *Cummings*, 142 S. Ct. at 1571-72, 1576.

withdrawing money from her retirement account are recoverable if the jury finds that the losses were caused by the defendant's action); *see also Luciano v. Olsten Corp.*, 912 F. Supp. 663, 674 (E.D.N.Y. 1996) (declining to reduce the jury's award of damages which included the early withdrawal tax penalty the plaintiff incurred for withdrawing money from her IRA account), *aff'd* 110 F.3d 210 (2d Cir. 1997).

However, Plaintiff testified that he had to withdraw the money from his 401k to buy the house he was living in at the time of his deposition. (ECF No. 52-2 at Pg ID 1278-79.)  According to Plaintiff's testimony, this purchase was made while he was working light duty.  (*Id*. at Pg ID 1279.)  Thus, this injury preceded the alleged retaliation.

The circumstances surrounding Plaintiff's payment of a deposit on new home construction and his loss of that deposit have not been presented to the Court.  Thus, the Court lacks information to assess whether a reasonable jury could conclude that this purported injury was proximately caused by the alleged retaliation.  Whether the injury was foreseeable is a question of fact for the jury. *See Rupert v. Daggett*, 695 F.3d 417, 426 (6th Cir. 2012) (citations omitted).

## Conclusion

For the reasons stated, the Court reserves its decision for trial as to whether Plaintiff's lost wages should be limited due to Defendants' unconditional offer of

reinstatement.  Plaintiff is precluded from seeking damages based on any claimed

loss of reputation or esteem or for loss of career opportunities or earning capacity.

Plaintiff also is precluded from seeking damages for expenses that normally would

have been paid by the lost income he also seeks to recoup.  The evidence reflects

that the tax penalty Plaintiff incurred by withdrawing money from his 401k was

not caused by Defendants' alleged retaliation.  Finally, Plaintiff cannot recover

damages for unenrolling his daughter from private school, meeting with a

bankruptcy attorney about filing for bankruptcy, or moving in with his mother-in-

law.

  Accordingly,

  **IT IS ORDERED** that Defendants' Rule 56 Motion for Summary Judgment

as to Damages (ECF No. 51) is **GRANTED IN PART AND DENIED IN PART**.

       s/ Linda V. Parker
       LINDA  V. PARKER
       U.S. DISTRICT JUDGE

 Dated: August 2, 2023